IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RANDALL THOMAS MCARTY                                                                    PLAINTIFF

v.                               Civil No. 6:18-cv-06032

CRYSTAL LITTLETON, Hobby Craft
Supervisor, Ouachita River Correctional
Unit (ORCU); WARDEN FAUST, ORCU;
ASSISTANT WARDEN JACKSON, ORCU;
and ASSISTANT WARDEN STEVE
OUTLAW, ORCU                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 48). Plaintiff has filed a response to the motion. (ECF No. 52). Defendants have filed a reply to Plaintiff's response. (ECF No. 58). In addition, Plaintiff has filed a response to Defendants' reply (ECF No. 62) and a supplemental response in opposition to Defendants' motion. (ECF No. 65). The Court finds the matter ripe for consideration.

### I. BACKGROUND

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Arkansas Department of Correction ("ADC") and is currently housed at the Varner Unit. Plaintiff's claims concern his incarceration and subsequent transfer from the Ouachita River Correctional Unit ("ORCU") to the Varner Unit.

In his Second Amended Complaint, Plaintiff alleges that Defendants unconstitutionally retaliated against him by revoking his Hobby Craft card at the ORCU. Plaintiff also alleges that he was retaliated against when he was transferred from the ORCU to the Varner Unit on February 8, 2018. (ECF No. 42).

Defendant Crystal Littleton has been the Hobby Craft Supervisor at the ORCU since

November 20, 2016. (ECF No. 50-1). Defendant Faust is and was at all times relevant to this lawsuit the Warden at the ORCU. (ECF No. 43). Defendants Outlaw and Jackson are and were at all times relevant to this case Assistant Wardens at the ORCU. (ECF No. 43).

The ORCU is primarily a treatment unit for inmates with medical conditions and/or special needs. (ECF No. 50-2). The ORCU is a minimum to medium security unit and is intended only to house prisoners with medical conditions and/or special needs. (ECF No. 50-2). The ORCU frequently receives transfer requests from other ADC units needing to send inmates that require services only provided at the ORCU. (ECF No. 50-2).

Generally, inmates whose medical issues are resolved at the ORCU are returned to the same units or units similar to those from which they came. (ECF No. 50-2). The Classification Officer at the ORCU keeps a list of inmates currently housed at the ORCU that are eligible to be transferred. An inmate can only be placed on the transfer list by Warden Faust, an assistant warden, or a major. (ECF No. 50-2).

The Hobby Craft program is authorized by Administrative Directive 16-49, Inmate Work Craft Program. (ECF No. 50-1; ECF No. 50-4, pp. 45-51). The Hobby Craft program at each ADC unit is governed by policies specific to that unit. At the ORCU, the Hobby Craft program is governed by Ouachita River Correctional Unit Policy and Procedures, O.R.U. 22.1.0, Hobby Craft Privileges. (ECF No. 50-1; ECF No. 50-4, pp. 38-44). Section V of O.R.U. 22.1.0 states that "Hobby Craft participation is a privilege and should be treated as such." (ECF No. 50- 4, pp. 38). All tools for Hobby Craft activities "must be on the inmates' inventory." (ECF No. 50-4, pp. 39-40). Further, "[a]n inmate's inability to account for Hobby Craft items will result in the revocation of Hobby Craft privileges and formal disciplinary action may also be taken." (ECF No. 50-4, p. 40). O.R.U. 22.1.0(VI)(I)(2) advises inmates that "Hobby Craft privileges may be revoked or suspended with failure to observe verbal or written Hobby Craft rules." (ECF No. 50-4, p. 43).

Before an inmate can participate in the Hobby Craft program, the inmate must sign an

institutional agreement stating the following:

> I understand that I may not sell, give away, loan, or sublet any of my Hobby Craft tools/equipment to other inmates. I understand that I am Accountable for all my Hobby Craft tools, equipment, etc. at all times. If my tools are stolen, I must report the theft immediately to the Shift Supervisor. I understand that the violation of any of the above rules or any other Hobby Craft Regulation may result in disciplinary action and/or revocation of My Work Craft privileges.

(ECF No. 50-1; ECF No. 50-4, p. 43-44). According to Littleton, an inmate's Hobby Craft privileges (Hobby Craft card) can be revoked without formal disciplinary action being taken. (ECF No. 50-1, p. 2).

Plaintiff's Hobby Craft card was originally issued on February 10, 2016, after he signed an Institution/Inmate Agreement for Hobby Craft. (ECF No. 55-1, pp. 1-2: 10-11). On November 14, 2017, Plaintiff, who was being housed at the ORCU, signed a new Institution/Inmate Agreement for Hobby Craft. (ECF Nos. 50-1; 50-4, pp.11-12). In addition to the above language, the agreement signed by Plaintiff stated, "I understand that the violation of any of the above rules or any other Hobby Craft Regulation as stated in ORU policy number 22.1.0 may result in disciplinary action and/or revocation of my Work Craft privileges at which time I must wait six (6) months before I can reapply." (ECF No. 50-4, p. 11).

Littleton revoked Plaintiff's Hobby Craft card on or about January 22 or 23, 2018.[1] (ECF No. 42, p. 8; ECF No. 50-1). Littleton's affidavit states that she revoked Plaintiff's Hobby Craft card because he failed to maintain an accurate and up-to-date inventory list of his tools and supplies. (ECF No. 50-1). Specifically, Littleton testifies that Plaintiff's "Daily Use Area Tool Inventory" dated January 22, 2018, failed to include a utility blade. (ECF Nos. 50-1; 50-4, p. 36).

Plaintiff admits that his January 22, 2018 inventory failed to include a utility blade. Plaintiff also admits that, on that date, a utility blade was found in his Hobby Craft tools. (ECF

---

[1] Littleton's Affidavit states that she informed Plaintiff "that his Hobby Craft card had been revoked" on January 23, 2018. (ECF No. 50-1, p. 3). However, Plaintiff's verified complaint asserts that his Hobby Craft card was revoked on January 22, 2018, and he began filing grievances concerning the revocation on January 22, 2018. (ECF No. 42, p. 8; ECF No. 50-4, pp. 9-10, 13-14, 15-16).

3

No. 50-3, p. 3). However, Plaintiff asserts that a mix-up with his inventory list is to blame for the discrepancy. According to Plaintiff, the utility blade that was left off his inventory list was supposed to have been confiscated by Littleton, because it was not on the approved list of tools for Hobby Craft participants. (ECF No. 50-4, pp. 20-22; ECF No. 55, pp. 38-40). Plaintiff asserts that he received forms stating that the utility blade was officially confiscated and removed from his inventory on November 19, 2017. (ECF No. 52-2, p. 11; ECF No. 55, pp. 38-40). Plaintiff further asserts that after he received his inventory in January 2018, he discovered that the tools he thought had been confiscated were still located in their spot in the cabinet. (ECF No. 55, p. 53).

According to Plaintiff, before his Hobby Craft card was revoked, he had spoken to Littleton's "porters" about the problems with the tool inventory. Plaintiff alleges that the revocation of his Hobby Craft card was in retaliation for his complaints about problems with the tool inventories. (ECF No. 52-2, p. 12). Plaintiff also asserts that he asked "them to correct [his inventory] earlier on . . . [and] assumed that they had, but obviously they still weren't on there." (ECF No. 52-6 at pp. 53-54). Plaintiff *thinks* that he filed a "request for an interview" with Littleton to attempt to correct the inventory before his Hobby Craft card was revoked. (ECF No. 55-1, p. 56). Plaintiff does not remember if he put the "request for an interview" in the mailbox or the Hobby Craft box. (ECF No. 55-1, pp. 54-56).

On January 22, 2018, Plaintiff filed a Formal Grievance, which states:

On 1-22-18, Hobby Craft Supervisor retaliated against myself and others, by revoking my card for not communicating with her about the inventory and her closed door policies. Every since Mrs. Littleton has become Hobby Craft Supervisor the inventory has been incorrect, she lost a pair of scissors and a box cutter not long ago that still has not been accounted for, as Sgt. Ugartchea wrote a 005 on at the time. She has even suggested for myself and others in Hobby Craft to speak with her clerks however its ADC policy that inmates are not to supervise other inmates. The inventory is ultimately Mrs. Littleton's responsibility.

The Warden/Center Supervisor's Decision regarding the grievance, signed by Warden Faust and dated February 2, 2018, states:

4

> In her response, Ms. Littleton states that she has not retaliated against you. She also states that you were notified, in writing, that if there was a discrepancy with your inventory logs, you needed to advise her immediately but you failed to do so. Ms. Littleton states that she does not have a closed door policy but you are not allowed to just show up at her office whenever you want. Ms. Littleton advises in order to speak to her you need to submit an Inmate Request Form to her explaining why you need to speak to her and request an interview. She will then call for you and see you concerning your problem. The reason your Hobby Craft Card was revoked was because I asked Ms. Littleton to pull them from inmates that did not keep their inventory accurate. Hobby Craft is a privilege and you must take responsibility for your inventory to insure it is correct at all times for security reasons. You failed to keep your inventory logs up to date and for that reason lost your Hobby Craft card.
>
> I find your grievance without merit.

(ECF No. 50-4, pp. 9-10).

Plaintiff filed another Formal Grievance dated January 22, 2018, stating that he has no control over his inventory and that Littleton bears the responsibility of accurately maintaining his inventory lists. The Warden/Center Supervisor's Decision regarding Plaintiff's second grievance, signed by Warden Faust and dated February 2, 2018, stated that Plaintiff knew he was required to bring discrepancies in his inventory to Littleton's attention, but he failed to do so. (ECF No. 50-4, pp. 13-14).

Plaintiff filed another Formal Grievance on January 23, 2018, stating that Littleton racially discriminated against him by revoking his Hobby Craft card because she corrected other inmates' inaccurate inventory lists. The Warden/Center Supervisor's Decision regarding Plaintiff's third grievance, signed by Warden Faust and dated February 2, 2018, stated that Littleton did not discriminate against Plaintiff and that she did not give other inmates preferential treatment. ECF No. 50-4, pp. 15-16). All Plaintiff's grievances were found to be without merit.

Plaintiff originally came to the ORCU from a medium to maximum security unit. (ECF No. 50-2). Defendants assert that in January 2018, Plaintiff no longer had any medical issues requiring special treatment at the ORCU. Plaintiff disputes this assertion and points to his medical

records for support, specifically the statement by Dr. Robert Breving that Plaintiff will "need to be on a Barrett's surveillance regimen for the rest of his life" and that "he may need to undergo Barrett's ablation again sometime in the future as Barrett's can regrow at the same site." (ECF No. 63, p. 29).

On February 1, 2018, Defendant Warden Faust emailed the ORCU Classification Officer, advising her to add Plaintiff's name to the transfer list. (ECF No. 50-2). Faust's email includes "Inmate McCarty #101565" in the subject line and states, "[s]ee if you can get him to another unit, he needs a change of scenery. He is a lifer, medical-M2 with no restrictions, so he should not be hard to transfer. Thank you." (ECF No. 52, p. 146). Faust's affidavit states that she put Plaintiff on the transfer list "because he no longer needed medical services, and had no medical restrictions, and he is serving a life-sentence as a result of a conviction of [First] Degree murder." (ECF No. 50-2).

Faust's affidavit further states that her "office did not receive any of [Plaintiff's] grievances until February 2, 2018." (ECF No. 50-2). Plaintiff's grievances are each stamped "RECEIVED Feb 02 2018 Ouachita River Unit Wardens Office" in the lower right corner. (ECF No. 50-4, pp. 9-16).

An email from the ORCU Classification Officer to another ORCU employee dated February 7, 2018, states that "[Deputy Warden] Jackson said the Inmate McArty 101565 has been approved as a swap for [another inmate]." (ECF No. 50-4 at 3). Faust indicated in her affidavit that Plaintiff was transferred to the Varner unit to open a bed for Inmate Gray, who had been transferred from Varner to the ORCU hospital on January 18, 2018, and then discharged from the ORCU hospital on February 7, 2018. (ECF No. 50-2). Faust stated that when Gray was discharged from the hospital, the Varner Unit requested that Gray be discharged to the ORCU because he needed continuing medical treatment. Faust further testified that for the ORCU to have a bed for Gray, an inmate from the ORCU needed to be transferred to the Varner Unit. (ECF No. 50-2).

6

In her affidavit, Faust stated that it was her decision to transfer Plaintiff. Faust also stated that she notified Defendants Deputy Warden Jackson and Deputy Warden Outlaw, but they had no role in Plaintiff being transferred from the ORCU. (ECF No. 50-2). Faust further stated that Defendant Littleton was a non-security staff member who was not involved in the decision to transfer Plaintiff. (ECF No. 50-2).

Plaintiff submitted the affidavit of Kenny Halfacre, an inmate, who has been assigned to the job of classification clerk at several ADC units. Halfacre's affidavit states that he was

> a classification clerk at the Cummins Unit, the East Arkansas Unit, and the Max Unit at Tucker, and it was an unwritten policy that when a transfer was requested for an inmate who was not a disciplinary problem and had not requested a unit transfer, the respective inmate had become a management problem and someone wanted him transferred to a punishment unit, such as the Varner or East Arkansas Units. This is especially true if the transfer request is initiated by someone from the higher chain of command, Warden, Deputy Warden, etc. As a general rule, these people don't concern themselves with trivial matters such as transfers, so when one of these people do request an inmates transfer that inmate has done something that's caused him to become a management problem and a transfer to a punishment unit is the solution to the problem.

(ECF No. 55-1, p. 34).

In the present motion, Defendants argue that they are entitled to summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.

1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Plaintiff alleges that Defendants retaliated against him by revoking his Hobby Craft card and transferring him to the Varner Unit. Defendants argue that they are entitled to summary judgment on all claims. Defendants also argue that they are entitled to qualified immunity.

#### A. Official Capacity Claims

Plaintiff makes claims against Defendants in both their individual and official capacities. In the present case, Defendants are all employees of the ADC, a state agency. An official capacity claim against any state employee is essentially a claim against the State of Arkansas. "The Eleventh Amendment bars suits against a State by citizens of that same State in federal court." *Williams v. Missouri*, 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)). "This bar exists whether the relief sought is legal or equitable." *Id.* (quoting *Papasan*, 478 U.S. at 276). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 342(1979)). In this case, the State of Arkansas and

its agencies have not consented to suit in federal court. Therefore, summary judgment should be entered in favor of Defendants regarding Plaintiff's official capacity claims.[2] The reminder of the Court's opinion will address only the individual capacity claims.

### B. Retaliation Regarding Revocation of Hobby Craft Card

Plaintiff claims that Defendant Littleton retaliated against him by revoking his Hobby Craft card. Specifically, Plaintiff asserts that he engaged in protected activity by complaining to Littleton's "inmate porters" about problems with the Hobby Craft tool inventory and writing to "Mrs. Littleton about the problems with the inventory." (ECF No. 52-1, p. 12). According to Plaintiff, the revocation of his Hobby Craft card was in retaliation for these complaints. (ECF No. 52-1, p. 12).

"An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1995)). "However, claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Id*. (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)). "Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Id*. (citing *Goff v. Burton*, 7 F.3d 734, 738-39 (8th Cir. 1993)).

Turning now to the present case, the Ouachita River Correctional Unit Policy and Procedures requires that all tools for Hobby Craft activities "must be on the inmates' inventory." (ECF No. 50-4, p. 39-40). Further, "[a]n inmate's inability to account for Hobby Craft items will result in the revocation of Hobby Craft privileges and formal disciplinary action may also be taken." (ECF No. 50-4, p. 40). Plaintiff signed a Hobby Craft agreement in November 2017

---

[2] Defendants' Motion does not specifically address Plaintiff's official capacity claims. However, 28 U.S.C. § 1915(e)(2)(B)(ii-iii) states that "the court shall dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious; [or] fails to state a claim on which relief may be granted."

stating he understood that he was "accountable for . . . [his] Hobby Craft tools [and] equipment . . . at all times" and that a "violation of any of the . . . rules or any other Hobby Craft Regulation . . . may result in disciplinary action and/or revocation of [his] Work Craft privileges." (ECF No. 50-1, pp. 2-3). Finally, Plaintiff admits that his tool inventory was incorrect.

Although Plaintiff testified that he "thinks" he tried to request an interview with Littleton to attempt to correct his inventory, he agrees that his inventory was not accurate on January 22, 2018, as required by the Ouachita River Correctional Unit Policy and Procedures. (ECF Nos. 50-3, p. 3; ECF No. 55-1, pp. 53-54; 56). Because there is no genuine issue of material fact concerning Plaintiff's violation of a Hobby Craft rule, Plaintiff's claim of retaliation with respect to the revocation of his Hobby Craft card fails. Accordingly, summary judgment should be entered in favor of Defendant Littleton in her individual capacity regarding this claim.

### C. Retaliation Regarding Transfer

Plaintiff alleges a retaliatory transfer claim against Defendants Littleton, Faust, Jackson, and Outlaw. "In a retaliatory transfer case, the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive the transfer would have not occurred." *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996) (internal quotation omitted). "Even if retaliation was one factor in the decision to transfer [an inmate]," the inmate must show that his transfer would not have occurred "but for" the retaliation. *Beaulieu v. Ludeman*, 690 F.3d 1017, 1026 (8th Cir. 2012); *Webb v. Hedrick*, 409 F. App'x 33, 35 (8th Cir. 2010) (unpublished).

Plaintiff alleges that he engaged in protected activity by filing several grievances concerning the revocation of his Hobby Craft card. Plaintiff further asserts that his transfer to Varner was in retaliation for those grievances. As set forth above, Plaintiff's Hobby Craft privileges were revoked on or about January 22 or 23, 2018. Plaintiff filed two grievances concerning this revocation on January 22, 2018, and another grievance on January 23, 2018.

10

Plaintiff was placed on the transfer list pursuant to an email from Faust on February 1, 2018. Plaintiff was transferred from the ORCU to Varner on February 8, 2018.

### 1. Warden Faust

As set forth above, beginning January 22, 2018, Plaintiff filed at least three grievances concerning the revocation of his Hobby Craft card. Faust placed Plaintiff on the transfer list on February 1, 2018. Faust's February 1, 2018 email states, "[s]ee if you can get him to another unit, he needs a change of scenery. He is a lifer, medical-M2 with no restrictions, so he should not be hard to transfer. Thank you." (ECF No. 52, p. 146). On February 2, 2018, Faust dated and signed the Warden/Center Supervisor's Decision denying each of Plaintiff's grievances. (ECF No. 50-4, pp. 9-10, 13-14, 15-16). Plaintiff was transferred to the Varner Unit on February 8, 2018.

Although Faust's affidavit testimony states that her "office did not receive any of [Plaintiff's] grievances until February 2, 2018," a question remains as to whether Faust *personally knew* of Plaintiff's grievances prior to Faust's placement of Plaintiff on the transfer list. This fact question, considered together with the content and tone of Faust's email directing that Plaintiff be placed on the transfer list, leads the Court to find that genuine issues of material fact remain which prevent summary judgment regarding Plaintiff's claim of retaliatory transfer against Faust.

The Court also finds that Faust is not entitled to qualified immunity with respect to the alleged retaliatory transfer. An individual is "denied qualified immunity if the answers to the following two questions are yes: '(1) whether the plaintiff has shown the violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.'" *Jones v. McNeese*, 746 F.3d 887, 894 (8th Cir. 2014) (quoting *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805 (8th Cir. 2010)). In the present case, genuine issues of material fact exist regarding whether Plaintiff's transfer was in retaliation for his grievances,

11

and thus a question remains as to whether Plaintiff has shown a violation of a constitutional right. Thus, the Court proceeds in its analysis to the second question and finds that the right to be free from retaliation for participating in a constitutionally protected activity was clearly established at the time of Plaintiff's transfer. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 890-91 (8th Cir. 2006); *Lamar v. Kelley*, 2017 WL 3084106 (E.D. Ark. June 20, 2017). Accordingly, Faust is not entitled to qualified immunity with respect to the alleged retaliatory transfer.

### 2. Littleton, Jackson and Outlaw

Defendants Littleton, Jackson, and Outlaw seek summary judgment on Plaintiff's claims regarding his transfer because of their lack of personal involvement in the transfer. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted).

Defendants Littleton, Jackson, and Outlaw have presented the affidavit testimony of Warden Faust, which states that Faust placed Plaintiff on the transfer list on February 1, 2018. (ECF No. 50-2). Faust further states that neither Littleton, Jackson, nor Outlaw had any role in Plaintiff's transfer. Littleton has also submitted an affidavit stating that she played no role in the decision to transfer Plaintiff. (ECF No. 50-1). Thus, Plaintiff has failed to meet proof with proof, as he provides no evidence that Littleton, Jackson, or Outlaw had any role in his alleged retaliatory transfer to the Varner Unit. (ECF No. 55-1, pp. 58-60).

For these reasons, the Court finds that summary judgment should be granted with respect to Plaintiff's retaliatory transfer claim against Littleton, Jackson, and Outlaw.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 48) should be and hereby is **GRANTED IN PART and DENIED IN PART**. Summary judgment is **GRANTED** with respect to Plaintiff's claim of retaliation against Defendant Littleton regarding the revocation of his Hobby Craft card. Summary judgment is **GRANTED** with respect to Plaintiff's retaliation claim against Defendants Littleton, Jackson, and Outlaw regarding transfer. Summary judgment is **GRANTED** with respect to Plaintiff's claims against all Defendants in their official capacities. All claims stated above upon which the Court has granted summary judgment are **DISMISSED WITH PREJUDICE**. Summary judgment is **DENIED** with respect to Plaintiff's retaliatory transfer claim against Defendant Faust, and this is the only claim that remains in this lawsuit.[3] The Court will issue a separate order scheduling the jury trial in this matter.

**IT IS SO ORDERED**, this 10th day of July, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[3] Plaintiff's Second Amended Complaint sets forth only two retaliation claims. However, in other pleadings, Plaintiff seems to raise due process arguments. To the extent that Plaintiff attempts to assert a due process claim, that claim would fail. "[A] prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer." *Murphy v. Mo. Dep't. of Corr.*, 769 F.2d 502, 503 (8th Cir. 1985); s*ee also Meachum v. Fano*, 427 U.S. 215 (1976). Further, "[p]risoners have no constitutional right to educational or vocational opportunities during incarceration." *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992); s*ee also Logan v. May*, 2012 WL 274742 (E.D. Ark. Jan. 19, 2012) ("Because Plaintiff may pursue a claim for the loss of his Hobby Craft supplies before the Arkansas Claims Commission, he has no due process claim for the loss of his property.")